IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HEAT TECHNOLOGIES, INC., <br><br>    Plaintiff, <br><br> v. <br><br> PAPIERFABRIK AUGUST KOEHLER SE, MANFRED HUBER, JOACHIM UHL, LUTZ KÜHNE, AND MICHAEL BOSCHERT, <br><br>    Defendants. | Civil Action No. <br> 1:18-cv-01229-SDG |

PAPIERFABRIK AUGUST KOEHLER SE,

    Counter Plaintiff,

            v.

HEAT TECHNOLOGIES, INC. AND ZINOVY PLAVNIK,

    Counter Defendants.

## **OPINION AND ORDER**

This matter is before the Court on Counter Defendants Heat Technologies, Inc. ("HTI") and Zinovy Plavnik's ("Plavnik") (collectively, "HTI-Plavnik") partial motion to dismiss Counter Plaintiff Papierfabrik August Koehler SE's ("Koehler") counterclaims [ECF 60] and Defendants Koehler, Manfred Huber, Joachim Uhl, Lutz Kühne, and Michael Boschert's (collectively, "Defendants") partial motion for judgment on the pleadings [ECF 91]. For the following reasons, HTI-Plavnik's

motion is **GRANTED IN PART** and **DENIED IN PART** and Defendants' motion

is **GRANTED**. Koehler has also filed a motion, in the alternative, to amend its

Answer and Counterclaims [ECF 73]. That motion is **DENIED AS MOOT**.

## I.    BACKGROUND

The Court treats the following facts as true for the purpose of resolving these

motions.[1] HTI is an Atlanta, Georgia technology company dedicated to advanced

research, product development, and commercialization of its patented equipment

in the heat and mass transfer field.[2] Since its 1996 founding, HTI—through its

founder and president, Plavnik—has invented a number of products that

incorporate its drying, heating, and pressure-wave technologies into a variety of

commercial applications.[3] Since 2009, HTI has produced and sold its "Spectra

---

[1]    *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005) (stating that, in resolving a motion for judgment on the pleadings, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmoving party); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]    ECF 1, ¶ 1.

[3]    *Id.*

HE™ Ultra Drying System," which has been used to dry a variety of materials, including paper.[4]

In 2012, Koehler and Boschert, Uhl, Kühne, and Huber (the "Individual Defendants")—whom at the time were all employed by Koehler—began discussions with HTI to use HTI's technology to dry Koehler's specialty paper products.[5] During the following months, Plavnik traveled to Koehler's facilities in Germany to meet with Uhl, Kühne, and Boschert;[6] likewise, Huber, Kühne, and Boschert visited HTI's Atlanta headquarters;[7] and Boschert visited one of HTI's customer's facilities in Morristown, Tennessee to examine and test HTI's drying systems using samples of Koehler's paper products.[8] After evaluating and learning the details of HTI's technologies and drying system, Koehler purchased a Spectra HE™ Ultra Drying System that was delivered and installed in Koehler's plant in Germany on September 19, 2012.[9]

---

[4]   *Id.*

[5]   *Id.* ¶ 2.

[6]   *Id.* ¶ 49.

[7]   *Id.* ¶¶ 1, 52, 55–58.

[8]   *Id.*

[9]   *Id.*

On September 28, 2012, Koehler—unbeknownst to HTI—filed a patent application in Germany that HTI alleges claimed inventorship of HTI's technology.[10] HTI contends the German patent application falsely named the Individual Defendants as the inventors and was filed by a German law firm (Meissner, Bolte & Partner GbR) that had previously represented HTI in patent matters.[11]

On March 26, 2015, Koehler filed a patent application with the United States Patent and Trademark Office (USPTO) claiming priority in the German patent application.[12] This application listed the Individual Defendants as the inventors of the claimed subject matter.[13] On December 26, 2017, the USPTO issued U.S. Patent No. 9,851,146 ("'146 Patent") to Koehler.[14] According to HTI, the '146 Patent is "directed to an improvement in convection drying through the use of ultrasound."[15]

---

[10]   *Id*. ¶¶ 3, 68.

[11]   *Id*. ¶¶ 3, 66.

[12]   *Id*. ¶ 73.

[13]   *Id*. ¶ 74.

[14]   *Id*. ¶ 4.

[15]   *Id*. ¶ 20.

HTI alleges that it first disclosed the subject matter of the '146 Patent two years before Koehler filed its German patent application, in HTI's U.S. patent application Serial No. 12/367,803, which was published on August 12, 2010 as Publ. No. 2010/0199510 ("510 Publication").[16] The 510 Publication names Plavnik as the sole inventor of the at-issue subject matter.[17] The USPTO later issued the subject matter of the 510 Publication to Plavnik as U.S. Patent No. 9,068,775 ("'775 Patent") on June 30, 2015.[18] The claims of the '775 Patent are directed to a method for calibrating an apparatus for drying a material.[19] HTI is the owner, by assignment from Plavnik, of the 510 Publication and the '775 Patent.[20] HTI alleges that Defendants fraudulently filed the German and American patent applications and misappropriated Plavnik's invention disclosed in the 510 Publication (the subject matter of which subsequently issued as the '775 Patent) for their own commercial benefit.[21]

---

[16] *Id.* ¶¶ 29, 33. HTI's U.S. patent application was filed on February 9, 2009. *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* ¶ 30.

[20] *Id.* ¶ 32.

[21] *Id.* ¶¶ 82–86.

HTI initiated this action on March 23, 2018, asserting five claims: correction of inventorship for the '146 Patent under 35 U.S.C. § 256 (Count I); unjust enrichment (Count II); conversion (Count III); punitive damages (Count IV); and attorneys' fees and litigation expenses (Count V).[22] On September 13, 2019, after an unsuccessful motion to dismiss and subsequent interlocutory appeal to the Federal Circuit Court of Appeals, Defendants answered HTI's Complaint and Koehler asserted eight counterclaims against HTI and Plavnik.[23] Counterclaim Counts I–III and V–VII assert claims for declaratory judgment; counterclaim Count IV seeks a finding of joint inventorship; and counterclaim Count VIII asserts a claim for unjust enrichment.[24]

On October 4, 2019, HTI-Plavnik filed their partial motion to dismiss Koehler's counterclaim Counts II, III, VII, and VIII.[25] On October 18, 2019, Koehler

---

[22]   *See generally* ECF 1.

[23]   ECF 53.

[24]   *Id.*

[25]   ECF 60.

filed its opposition.[26] HTI-Plavnik replied on November 1, 2019.[27] The Court heard oral argument from the parties on January 7, 2020.[28]

On February 12, 2020, Defendants filed their motion for partial judgment on the pleadings, seeking dismissal of Counts II–V of HTI's Complaint.[29] HTI filed its opposition on March 6.[30] Defendants replied on March 30.[31] The Court addresses each motion separately.

## II.   MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018)). "Judgment on the pleadings is

---

[26]   ECF 72.

[27]   ECF 78.

[28]   ECF 86.

[29]   ECF 91.

[30]   ECF 100.

[31]   ECF 108.

appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). "If it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the complaint." *King*, 775 F. App'x at 620 (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)).

### B.   Discussion

Defendants seek dismissal of HTI's state law claims for unjust enrichment (Count II), conversion (Count III), punitive damages (Count IV), and attorneys' fees and litigation expenses (Count V). The Court addresses each claim in turn.

### *i.*   Federal Patent Law Preempts HTI's Unjust Enrichment and Conversion Claims (Counts II and III).

Defendants argue federal patent law preempts HTI's state law conversion and unjust enrichment claims. Pursuant to the Supremacy Clause of the Constitution, a state law is preempted if it conflicts with federal law. U.S. CONST. ART. VI, CL. 2. Preemption takes three forms:

> First, Congress may explicitly preempt state law; second, a federal scheme may occupy a given field and thus preempt state law in that field; and third, when compliance with both state and federal law is impossible, the conflicting state law is preempted.

*Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1305 (Fed. Cir. 2003) (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)).

Only the third form of preemption—conflict preemption—is potentially applicable in this case. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005) (holding that "federal patent law does not provide explicit preemption" and "Congress does not intend to occupy exclusively the field of unjust enrichment law."); *Mannsfeld v. Evonik Degussa Corp.*, No. CIV.A. 10-0553-WS-M, 2011 WL 53098, at *8 (S.D. Ala. Jan. 5, 2011) ("Following the logic of *Ultra–Precision* and its brethren, the Court observes that there is no reason to believe that Congress intends to occupy exclusively the field[ ] of . . . conversion law . . . therefore, [plaintiff's] claims implicate only ordinary preemption, not complete preemption."). Conflict preemption requires the "consideration of whether that [state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979).

"Federal Circuit law governs whether federal patent law preempts a state law claim." *Tavory v. NTP, Inc.*, 297 F. App'x 976, 982 (Fed. Cir. 2008). According to the Federal Circuit, "[f]ederal law preempts state law that offers 'patent-like protection' to discoveries unprotected under federal patent law." *Ultra-Precision*,

411 F.3d at 1377–78 (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989) ("States may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law.")). *See also Am. Cyanamid*, 342 F.3d at 1305–06 ("Through the federal patent laws, Congress has balanced innovation incentives against promoting free competition, and state laws upsetting that balance are preempted."). The Supreme Court has identified the core objectives of federal patent law: (1) "foster and reward invention," (2) "promote[ ] disclosure of inventions, to stimulate further innovation and to permit the public to practice the invention once the patent expires," (3) "assure that ideas in the public domain remain there for the free use of the public," (4) "demarcat[e] between public and private property," and (5) "promote national uniformity in the realm of intellectual property." *Bonito Boats*, 489 U.S. at 162. *See also Aronson*, 440 U.S. at 262. "A state cause of action that frustrates these objectives is preempted." *Ultra-Precision*, 411 F.3d at 1378.

In *Ultra-Precision*, the Federal Circuit held that federal patent law preempted the plaintiff's claim for unjust enrichment. *Id.* That court held that, "[i]n the absence of an incremental benefit conferred, any attempt to obtain a patent-like royalty for the making, using, or selling of a product in the public domain under the rubric of state unjust enrichment law is preempted." *Id.* On the facts at issue,

the court concluded federal law preempted the plaintiff's unjust enrichment claim because it did not plead "that it provided any incremental benefit to [defendant] over and above the benefit the general public received when [plaintiff] published its information in its issued patents." *Id.* at 1380. If the plaintiff had been permitted to pursue an unjust enrichment claim, it would have directly conflicted with federal patent law, as "a would-be inventor need not satisfy any of the rigorous standards of patentability to secure a perpetual patent-like royalty under state law based on the use of an unpatented idea." *Id.* at 1381.

HTI's unjust enrichment claim is based on allegations that "Defendants have received a benefit from HTI in their improper taking, possession, and use of HTI's proprietary information and intellectual property" that "came at great expense to HTI as a result of . . . years of advanced research and product development and commercialization."[32] Similarly, for its conversion claim, HTI alleges it "is the owner of the subject matter claimed in the '146 Patent" and "Defendants have wrongfully and without justification possessed and interfered with HTI's property, and its ownership interest in and rights to the '146 Patent."[33] In other words, Defendants' alleged tortious conduct amounts to "preventing and

---

[32]   ECF 1, ¶¶ 98–99.

[33]   *Id.* ¶¶ 104–06.

usurping HTI's ability to take commercial advantage of its invention and the '146 Patent."[34]

Based on these contentions, the Court finds HTI's state tort claims are preempted by federal patent law. As in *Ultra-Precision*, HTI does not plead that it provided any incremental benefit to Defendants over and above the benefit the public received when HTI (or Plavnik) published the 510 Publication, which subsequently issued as the '775 Patent.[35] Rather, through its state-law claims HTI is seeking compensation for Defendants' purported interference with HTI's ownership interests in the intellectual property embodied in the 510 Publication and '146 Patent. Put another way, HTI seeks patent-like protection dressed up as tort claims. Such claims stand as obstacles to the objectives of federal patent law and are thus preempted.

HTI asserts two arguments in opposition to preemption. First, it contends federal patent law cannot preempt its conversion and unjust enrichment claims because they "involve additional elements not found in patent law causes of action."[36] In support, HTI points to *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470,

---

[34]   *Id*. ¶ 108.

[35]   *Id*. ¶ 29.

[36]   ECF 100, at 17.

1473 (Fed. Cir. 1998). But that case is not as broad as HTI argues. There the Federal

Circuit held that:

> [A] state law tort claim is not preempted by the federal
> patent law, even if it requires the state court to adjudicate
> a question of federal patent law, provided the state law
> cause of action includes additional elements not found in
> the federal patent law cause of action ***and*** is not an
> impermissible attempt to offer patent-like protection to
> subject matter addressed by federal law.

*Id.* (emphasis added).

While the state and federal claims here may have differing elements, HTI is

indeed seeking "patent-like protection to subject matter addressed by federal law"

through its state-law claims. The proper inquiry to make this determination is

whether the state claim "stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress." *Ultra-Precision*, 411 F.3d

at 1377. Federal courts routinely find unjust enrichment and conversion claims

preempted under similar circumstances. *E.g.*, *OptoLum, Inc. v. Cree, Inc.*, 244 F.

Supp. 3d 1005, 1014 (D. Ariz. 2017) (finding plaintiff's unjust enrichment claim

preempted by federal patent law claim for change of inventorship); *Gen. Elec. Co.

v. Wilkins*, No. 1:10-cv-00674-OWW, 2011 WL 3163348, at *8 (E.D. Cal. July 26, 2011)

(finding plaintiff's conversion claim preempted by federal patent law for change

of inventorship); *Malik v. Lynk, Inc.*, No. CIV. A. 99-2015-KHV, 1999 WL 760217, at

*3 (D. Kan. Aug. 18, 1999) (rejecting plaintiff's argument that conversion claim is not preempted by federal patent law because conversion requires additional elements not required by patent infringement). Thus, HTI's argument in this regard is unavailing.

Second, HTI contends this case is more like *American Cyanamid* than *Ultra-Precision* and this Court should not find preemption. The Court does not agree. In *American Cyanamid*, the plaintiffs alleged that they provided the defendant with confidential information they intended to publish, which defendant subsequently claimed in a patent filing listing the defendant's employees as the sole inventors. 342 F.3d at 1303. The *American Cyanamid* plaintiffs based their unjust enrichment claim on allegations that defendant unfairly obtained its patent through the misappropriation of their confidential information. *Id*. The court found that federal patent law did not preempt plaintiffs' tort claim because the plaintiffs sought restitution through a quasi-contract theory, not patent-like protection. *Id*. at 1307.

*American Cyanamid* is distinguishable from this case. According to HTI's own allegations, on August 12, 2010 it publicly disclosed in the 510 Publication the information it now contends is confidential.[37] The 510 Publication "was publicly

---

[37]   ECF 1, ¶ 29.

available more than two years before Koehler filed its priority patent application in Germany that ultimately resulted in the '146 Patent."[38] In stark contrast to *American Cyanamid*, HTI's tort claims run headlong into federal preemption because HTI seeks patent-like protection over information it freely placed in the public domain over two years before Koehler filed its German patent application.

HTI also contends it shared other purportedly confidential documents during the parties' various meetings. HTI does not, however, point to any oral or written agreement among the parties rendering such information confidential or protected. In any event, HTI's voluntary sharing of this information does not change the fact that it disclosed the information it now seeks to protect in the 510 Publication well before Defendants filed their German patent application. *See Tavory*, 297 F. App'x at 983 ("[Plaintiff] argues that he alleged in his complaint that he provided his software to [defendant] in confidence. However, unlike in *American Cyanamid*, whether or not a breach of confidence occurred has no real bearing on [plaintiff's] claim. . . . Rather than seeking to deprive [defendant] of an ill-gotten benefit, [plaintiff] seeks to have his alleged fair share of the benefit . . .

---

[38]   *Id*. ¶ 32.

[t]his type of unjust enrichment claim is precisely what we held was preempted by federal patent law.").

Therefore, HTI's state tort claims are preempted by federal patent law.

### ii.   The Georgia Trade Secrets Act Preempts HTI's Unjust Enrichment and Conversion Claims (Counts II and III).

In addition, Defendants argue that HTI's state tort claims are preempted by the Georgia Trade Secrets Act ("GTSA"). HTI, conversely, asserts its claims do not come within the GTSA's purview. A motion for judgment on the pleadings is an appropriate vehicle for resolving such disputes. *Opteum Fin. Servs., LLC v. Spain*, 406 F. Supp. 2d 1378, 1380 (N.D. Ga. 2005) ("The Court can determine whether the GTSA supersedes plaintiff's common law claims on a motion for judgment on the pleadings even though the issue of whether the information qualifies as trade secrets under the GTSA remains disputed and unresolved.").

### 1.   HTI's Tort Claims Are Preempted by the GTSA.

The GTSA "supersede[s] conflicting tort, restitutionary, and other laws of [the State of Georgia] providing civil remedies for [the] misappropriation of a trade secret." O.C.G.A. § 10-1-767(a). *See also Opteum*, 406 F. Supp. 2d at 1380 ("The GTSA preserves a single tort cause of action under state law for misappropriation and eliminates other state causes of action founded on allegations of trade secret misappropriation.") (citing O.C.G.A. § 10–1–767). The

Georgia Supreme Court has held that the "GTSA preempts claims that rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret." *Robbins v. Supermarket Equip. Sales, LLC*, 290 Ga. 462, 466 (2012). *See also Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1344–46 (N.D. Ga. 2007) ("[W]here the full extent of the plaintiff's tort claims rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret . . . the claims are conflicting and thus precluded.") (citing *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1297 (11th Cir. 2003)). As this Court has recognized, "it would make little sense to go through the rigamarole of proving information was truly a trade secret if a plaintiff could alternatively plead claims with less burdensome requirements of proof." *Diamond Power*, 540 F. Supp. 2d at 1345.

In addition, Georgia law is clear that the at-issue proprietary information need not qualify as a trade secret to be preempted by the GTSA. *Robbins*, 290 Ga. at 465 ("For the GTSA to maintain its exclusiveness, a plaintiff cannot be allowed to plead a lesser and alternate theory of restitution simply because the information does not qualify as a trade secret under the act.") (citing *Opteum*, 406 F. Supp. 2d at 1380). Instead, "the key inquiry is whether the same factual allegations of

misappropriation are being used to obtain relief outside the GTSA." *Robbins*, 290 Ga. at 466–67.

HTI argues the GTSA does not preempt its state law conversion and unjust enrichment claims because it has not pleaded them in the alternative to a claim of trade secret misappropriation. That is not, however, the end of the inquiry. In response, Defendants point to the decision in *PHA Lighting Design, Inc. v. Kosheluk*, No. 1:08-cv-01208-JOF, 2010 WL 1328754, at *11 (N.D. Ga. Mar. 30, 2010). In *PHA Lighting*, the plaintiff did not assert a claim for the misappropriation of a trade secret or contend the at-issue information could constitute a trade secret. *Id*. Nonetheless, the Court found that "many courts have interpreted the [Uniform Trade Secrets Act's (UTSA)][39] preemption provision to eliminate **all alternative causes of action** for theft or other misuse of confidential or intangible information." *Id*. at *10. According to *PHA Lighting*, "the information is either a trade secret, and all other claims are preempted, or it is not a trade secret, and therefore plaintiff has no legal interest in the information." *Id*. *See also id*. at *11 ("If what was taken was intangible, proprietary information, then state law claims

---

[39] The GTSA is based on the UTSA and contains a nearly identical preemption provision. *Madison Oslin, Inc. v. Interstate Res., Inc.*, No. 2:11-cv-01343-SLB, 2012 WL 4730877, at *7 (N.D. Ala. Sept. 30, 2012); *PHA Lighting*, 2010 WL 1328754, at *10.

based on that taking were preempted, even where some of the information was not protected by the GTSA.") (citing *Diamond Power*, 540 F. Supp. 2d at 1345).

On those facts, *PHA Lighting* held that the GTSA preempted the plaintiff's conversion and unjust enrichment claims because "the proprietary information allegedly misappropriated . . . *does* come within the types of intangible information that may be protected as trade secrets." *Id*. (emphasis added) (citing O.C.G.A. § 10-1-761(4) (defining "trade secret" under the GTSA)). A plaintiff "surely cannot use general tort causes of action to revive claims which would otherwise not be cognizable in light of the [GTSA]." *PHA Lighting*, 2010 WL 1328754, at *11 (citing *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004) ("Despite its apparently limiting language . . . the [UTSA's] preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (*e.g.*, idea misappropriation, information piracy, theft of commercial information, etc.).")). Thus, for the Court to allow a plaintiff to assert such tort claims would be to "subvert the purpose of the GTSA because [p]laintiff would not have to prove that the information taken by [defendant] was a trade secret, yet could still recover for

misappropriation of intangible, proprietary information." *PHA Lighting*, 2010 WL 1328754, at *11.

Here, as in *PHA Lighting*, HTI's conversion and unjust enrichment claims are entirely premised on allegations of idea misappropriation and the theft and misuse of confidential information.[40] HTI summarizes its tort claims as such in its response brief.[41] HTI's Complaint is likewise filled with allegations that Defendants misappropriated HTI's intangible, proprietary information for their own commercial gain.[42] For instance, HTI bases its conversion claim on allegations

---

[40] The GTSA defines "misappropriation" as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." O.C.G.A. § 10-1-761.1(2)(A).

[41] ECF 100, at 19–20 ("HTI's state law claims serve to compensate HTI for the misuse of HTI's proprietary information and intellectual property for the unjust benefits Koehler received by virtue of its wrongful behavior in the context of the parties' commercial relationship.").

[42] *E.g.*, ECF 1, ¶ 5 ("As detailed below, Mr. Plavnik invented the subject matter claimed by Koehler in the 146 Patent. Defendants engaged in improper and fraudulent conduct by . . . misappropriating Mr. Plavnik's invention, which is the property of HTI."); p. 22 ("Defendants' Misappropriation of HTI's Invention"); ¶ 71 ("Koehler . . . continued to pursue patent protection for HTI's misappropriated invention."); ¶ 78 ("It was not until the issuance of the 146 Patent that HTI could review the patent claims, confirm Defendants' improper conduct and misappropriation with respect to U.S. patent rights, and obtain notice of the claims HTI could assert against Defendants in the U.S."); ¶ 82 ("Defendants acted intentionally, maliciously, and willfully to steal, usurp, misappropriate, and convert HTI's rights and property for their own commercial benefit in violation of common law and statutory rights.").

that "Defendants have received a benefit from HTI in their improper taking, possession, and use of HTI's proprietary information and intellectual property."[43] According to HTI, this "proprietary information and intellectual property came at great expense to HTI as a result of . . . years of advanced research and product development and commercialization."[44] For its conversion claim, HTI likewise alleges that "Defendants have wrongfully and without justification possessed and interfered with HTI's property, and its ownership interest in and rights to the 146 Patent."[45]

Given these allegations, HTI's unjust enrichment and conversion claims are preempted by the GTSA because the at-issue proprietary information falls squarely within the type of intangible information that may be protected as a trade secret. *See Dial HD, Inc. v. Clearone Commc'ns, Inc.*, No. cv 109-100, 2010 WL 3732115, at *12 (S.D. Ga. Sept. 7, 2010) ("By Plaintiffs' own terms, the information allegedly converted comes within the types of intangible information that may be protected as trade secrets."). Therefore, in addition to being preempted by federal

---

[43]   ECF 1, ¶ 98.

[44]   *Id.* ¶ 99.

[45]   ECF 1, ¶ 106.

patent law, HTI's conversion and unjust enrichment claims are also preempted by the GTSA.[46]

### 2. HTI's State-Law Tort Claims Are Not Exempt from GTSA Preemption.

The GTSA does not preempt claims arising under "[c]ontractual duties or remedies, whether or not based upon misappropriation of a trade secret" or "[o]ther civil remedies that are not based upon misappropriation of a trade secret." O.C.G.A. § 10-1-767(b). *See also Diamond Power*, 540 F. Supp. 2d at 1345 ("[I]f a claim seeks to remedy an injury caused not by the misappropriation of proprietary information, but by separate conduct—such as the misappropriation of physical property or the improper interference with contractual relationships respecting

---

[46] The Court recognizes that there is a split of authority among the states on this issue, as some states have interpreted their respective versions of the UTSA's preemption provision to permit a plaintiff to assert state tort claims as alternatives for information that does not rise to the level of a trade secret. *PHA Lighting*, 2010 WL 1328754, at *10 (collecting cases). This view has been categorized as the "minority approach." Richard F. Dole, Jr., *Preemption of Other State Law by the Uniform Trade Secrets Act*, SMU SCI. & TECH. L. REV. 95, 108 (2014) ("Under the 'minority approach,' Uniform Act preemption exists only if business information is a Uniform Act trade secret."). The "majority approach"—adopted by the Court in *PHA Lighting*—"preempts noncontractual legal claims protecting business information, whether or not the business information is a Uniform Act trade secret." *Id*. Based on its reading of Georgia law, the Court finds the "majority view" persuasive and adopts it in this case.

something other than proprietary information—such a claim cannot be said to be 'in conflict' with the GTSA."). HTI argues the GTSA does not preempt its conversion and unjust enrichment claims because they are based on other legal interests arising out of a duty of confidentiality and patent law. The Court does not agree.

First, HTI's Complaint is completely devoid of any allegations regarding a duty of confidentiality owed to it by Defendants.[47] Instead, in its response to Defendants' motion for judgment on the pleadings, HTI contends that the "Complaint recites other facts and attaches other evidence showing that HTI disclosed non-public information to Koehler under an expectation and understanding of confidentiality."[48] HTI also contends: (1) it "made two detailed written proposals that were prominently marked 'Confidential,'" (2) "Koehler signed a non-disclosure agreement in connection with its inspection of HTI's commercial machine," and (3) "HTI made a technical presentation that closed by offering to have further discussions 'under complete confidentiality.'"[49]

---

[47]   *See generally* ECF 1.

[48]   ECF 100, at 6.

[49]   *Id*.

HTI, however, fails to allege that Defendants owed it a contractual duty. As Defendants note, HTI's Complaint states that Koehler signed a "non-disclosure agreement with **Sonoco** in connection with Mr. Boschert's visit [to Morristown, Tennessee]."[50] HTI does not allege that it was a party to that agreement. HTI cannot transmute a contract between Koehler and Sonoco into a duty of confidentiality owed to HTI.

The remainder of HTI's contentions regarding a duty of confidentiality are not based on a contractual relationship at all. Instead, they are entirely premised on allegations that Defendants misappropriated proprietary information designated as confidential. Based on the plain language of O.C.G.A. § 10-1-767(b), this is insufficient to avoid GTSA preemption. § 10-1-767(b)(2) ("This article shall not affect . . . . [o]ther civil remedies that are **not** based upon misappropriation of a trade secret.") (emphasis added).[51]

---

[50]   ECF 1, ¶ 59 (emphasis added).

[51]   HTI also filed a letter from Koehler's legal counsel demanding that HTI refrain from showing without authorization photographs of, and making statements regarding, the Spectra device installed at Koehler's manufacturing facility [ECF 120]. HTI contends this demand letter demonstrates that some level of confidentiality obligations arose among the parties during their dealings in 2012 [*Id*]. This additional filing, however, does not exempt HTI's claims from preemption by the GTSA. HTI still fails to point to any duty of confidentiality or non-disclosure arising out of a contract among the parties. And any implied duty is solely premised on HTI's allegations that Koehler misappropriated

Second, HTI asserts that its claims arise out of a legal duty owed by virtue of federal patent law and are thus not preempted by the GTSA. This contradicts HTI's argument against federal preemption of its state-law tort claims based on the contention that such claims are ***not*** covered by federal patent law. For the reasons discussed above, the Court concludes that federal patent law preempts HTI's tort claims. Even if this were not the case, HTI's state tort claims would still be preempted by the GTSA.

Counts II and III of HTI's Complaint are **DISMISSED**.

### *iii.* **HTI's Claims for Punitive Damages and Attorneys' Fees and Expenses (Counts IV and V) Must Be Dismissed.**

Defendants seek to dismiss HTI's state law claims for punitive damages, attorneys' fees, and expenses because HTI may only seek litigation fees under federal patent law.   "[U]nder Georgia law, neither an O.C.G.A. § 13–6–11 attorneys' fees claim nor an O.C.G.A. § 51–12–5.1 punitive damages claim can survive without an award of relief on an underlying claim." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1357 n.8 (11th Cir. 2008) (citing *Morris v. Pugmire Lincoln Mercury, Inc.*, 283 Ga. App. 238, 241 (2007)). *See also Atlanta Glob.*

---

HTI's proprietary information, which is squarely within the purview of the GTSA.

*Res., Inc. v. First Ins. Funding Corp.*, No. 1:18-cv-01932-AT, 2019 WL 3557891, at *11 (N.D. Ga. Mar. 26, 2019) (granting defendants' motion for judgment on pleadings on plaintiff's claims for punitive damages and attorneys' fees after dismissing underlying substantive torts).

In Count IV, HTI seeks punitive damages based on "[t]he tortious conduct . . . committed by Defendants."[52] However, as stated above, HTI's substantive tort claims for conversion and unjust enrichment are preempted and must be dismissed. Without underlying tort claims, HTI's punitive damages claim cannot stand as an independent cause of action. Accordingly, Count IV is **DISMISSED**. *Massey v. Kelly, Inc.*, 742 F. Supp. 1156, 1158 (N.D. Ga. 1990) ("[T]he Georgia statute for punitive damages is not grounds for an independent cause of action.").

In Count V, HTI seeks to recover litigation expenses under O.C.G.A. § 13-6-11 because "Defendants have acted in bad faith, been stubbornly litigious, and caused HTI unnecessary trouble and expense."[53] In patent cases, a plaintiff may only seek litigation fees under 35 U.S.C. § 285. *See also Rothschild Connected Devices Innovations, LLC v. Coca-Cola Co.*, 389 F. Supp. 3d 1169, 1198 (N.D. Ga. 2019)

---

[52]   ECF 1, ¶ 111.

[53]   *Id.* ¶ 113.

("Section 285 of the Patent Act allows district courts to award attorneys' fees to prevailing parties in 'exceptional cases.'"). Under Georgia law, if a "relevant federal statute provides for the recovery of attorneys' fees, resort to the attorney fee provision of § 13-6-11 is redundant." *Ainsworth v. Cmty. Bible Church*, No. 1:10-cv-01964-SCJ, 2012 WL 13076749, at *10 (N.D. Ga. July 19, 2012) (citing *Nissan Motor Acceptance Corp. v. Stovall Nissan, Inc.*, 224 Ga. App. 295, 299 (1997)).

HTI's sole remaining cause of action is its change of inventorship claim regarding the '146 Patent under the Patent Act, 36 U.S.C. § 256. Since litigation fees are potentially available to HTI under federal patent law, it cannot resort to Georgia's bad-faith litigation statute as a source to recover fees. Accordingly, HTI can only seek its litigation fees pursuant to 35 U.S.C. § 285, and its claim under O.C.G.A. § 13-6-11 is redundant. Count V is **DISMISSED**.[54]

---

[54] HTI's response brief also contains a request to amend its Complaint. This request is procedurally improper, as "the proper method for requesting leave to amend is by separate motion, stating with particularity the grounds for seeking the order and the relief sought." *Ware v. All. One Receivables Mgmt.*, No. 1:13-cv-00369-CC-GGB, 2013 WL 12382901, at *2 (N.D. Ga. Sept. 9, 2013) (citing Fed. R. Civ. P. 7(b)(1)(B) & (C); LR 7.1(A)(1), NDGa). The Court declines HTI's request to amend in this fashion, and instructs HTI that if it wishes to amend its Complaint it must file a motion in compliance with the Federal and Local Rules for leave to do so.

### III.    HTI-PLAVNIK'S PARTIAL MOTION TO DISMISS

### A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n*, 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will

reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

### B.   Discussion

HTI-Plavnik request the dismissal of counterclaim Counts II, III, VII, and VIII. counterclaim Counts II, III and VII are brought under the Declaratory Judgment Act, while Count VIII asserts a tort claim for unjust enrichment.

### i.   The Declaratory Judgment Act

A district court may grant a declaratory judgment "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The 'actual controversy' requirement is rooted in Article III of the Constitution, which provides for federal jurisdiction over only 'cases and controversies.'" *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372,

1378 (Fed. Cir. 2007).[55] The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," as well as "real and substantial . . . admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The purpose of a declaratory judgment "in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1285 (Fed. Cir. 2007).

### ii.   Koehler's Declaratory Judgment Claim for the Preemption of HTI's State Law Claims (Counterclaim Count II)

In counterclaim Count II, Koehler asserts that an actual controversy exists as to whether the federal Patent Act preempts HTI's state law claims for conversion, unjust enrichment, punitive damages, and attorneys' fees. HTI-Plavnik contend the counterclaim must be dismissed because it constitutes an

---

[55] "Federal Circuit law governs the determination of whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement and/or validity." *River's Edge Pharm., LLC v. DUSA Pharm., Inc.*, No. 2:06-cv-45-WCO, 2006 WL 8436004, at *2 n.3 (N.D. Ga. June 16, 2006) (citing *Microchip Tech., Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 940 (Fed. Cir. 2006)).

"affirmative defense, or a basis on which a defendant might seek dismissal under Rule 12(b)(6)."[56] As stated above, the Court finds HTI's state law claims are preempted by federal patent law or are otherwise subject to dismissal. Therefore, counterclaim Count II is now moot and is **DISMISSED**.

### iii.   Koehler's Declaratory Judgment Claim for the Invalidity of the '775 Patent (Counterclaim Count III)

In counterclaim Count III, Koehler alleges the '775 Patent—owned by HTI through assignment from Plavnik—is invalid as covering material disclosed to the public as prior art before Plavnik applied for patent protection. HTI-Plavnik contend this counterclaim must be dismissed because the validity of the '775 Patent is not at issue in this case. Specifically, HTI-Plavnik state that Koehler has not alleged (1) any action by HTI directed toward Koehler related to the enforcement of the '775 Patent, or (2) any infringing conduct by Koehler creating a real dispute between the parties. Koehler responds that the interconnected nature of the '146 Patent and '775 Patent, through the 510 Publication, is central to HTI's claims.

---

[56]   ECF 60-1, at 13.

Prior to the Supreme Court's decision in *MedImmune*, the Federal Circuit

applied a two-prong test to determine if a party possessed standing to assert a

declaratory judgment claim challenging the validity of a patent:

> The first prong examined whether conduct by the
> patentee created a "reasonable apprehension" of suit on
> the part of the declaratory judgment plaintiff. The second
> prong focused on the declaratory judgment plaintiff's
> conduct, and examined whether there had been
> "meaningful preparation" to conduct potentially
> infringing activity.

*Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008) (collecting cases).

However, in *MedImmune*, the Supreme Court rejected this two-part analysis.

549 U.S. at 132 n.11. Instead, it held that the "question in each case is whether the

facts alleged, under all the circumstances, show that there is a substantial

controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at

127. The Federal Circuit has since described this as a "more lenient legal standard."

*Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008).

While no longer dispositive, the two-part test remains relevant to determine

whether an actual case or controversy exists such that the court may exercise

jurisdiction and adjudicate a declaratory judgment claim. *E.g., Prasco, LLC v.*

*Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) ("While the Supreme

Court rejected the reasonable apprehension of suit test as the sole test for jurisdiction, it did not completely do away with the relevance of a reasonable apprehension of suit. Rather, following *MedImmune*, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy."); *Cat Tech*, 528 F.3d at 880 ("[T]he issue of whether there has been meaningful preparation to conduct potentially infringing activity remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate. If a declaratory judgment plaintiff has not taken significant, concrete steps to conduct infringing activity, the dispute is neither 'immediate' nor 'real' and the requirements for justiciability have not been met.") (internal citation omitted). *See also Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2013) ("In determining whether a justiciable controversy is present, the analysis must be calibrated to the particular facts of each case.").

As stated, HTI-Plavnik argue counterclaim Count III must be dismissed because the validity of the '775 Patent is not a real or substantial controversy in this case. They assert that HTI has never sought to enforce the '775 Patent against

Koehler, and Koehler has never taken concrete steps to actually infringe the '775 Patent.

First, regarding HTI's own conduct, it is true that HTI has never sought or threatened to take enforcement actions against Koehler regarding the '775 Patent. But that does not end the Court's inquiry. *Organic Seed Growers*, 718 F.3d at 1355 ("A reasonable apprehension of suit is not necessary."). The Court must instead analyze Koehler's allegations "under all the circumstances." *MedImmune*, 549 U.S. at 127. And HTI's assertion that Koehler "seeks an advisory option on an abstract issue that HTI had never put into play" does not pass muster, since the '775 Patent is plainly relevant in this case.

HTI relies on the 510 Publication as evidence of Plavnik's inventorship over the subject matter claimed in Koehler's '146 Patent.[57] The subject matter of the 510 Publication later issued as the '775 Patent.[58] As noted by counsel for Koehler during oral argument, this provides HTI the opportunity to rely on presumptions regarding the 510 Publication and subsequent '775 Patent in the prosecution of its claims concerning the '146 Patent. For example, HTI may rely on the '775 Patent for the presumption that Plavnik is the sole inventor of the subject matter covered

---

[57]   ECF 1, ¶¶ 88–90.

[58]   *Id*. ¶ 32. *See also* ECF 53, ¶ 30.

by the 510 Publication. Moreover, HTI may rely on the issuance of the '775 Patent for the presumption that the subject matter in the 510 Publication is patentable at all and, thereby, expand its right to exclude under the patent. Koehler asserts that HTI should not be permitted to rely on these presumptions because the '775 Patent is invalid based on prior art, *i.e.*, the 510 Publication. Based on this posture, the Court finds that HTI's ability to rely on certain presumptions against Koehler flowing from the '775 Patent may be a core issue in this litigation, even if HTI has not yet attempted to enforce the '775 Patent against Koehler.

Second, viewing the totality of the circumstances, Koehler has sufficiently alleged that it will likely infringe on the '775 Patent. Koehler "must allege significant, concrete steps to conduct infringing activity." *Organic Seed Growers*, 718 F.3d at 1359 (citing *Cat Tech*, 528 F.3d at 880). As the owner of the '146 Patent, Koehler has made use of it in commerce. Koehler has alleged that the '146 Patent and '775 Patent are interconnected and claim the same subject matter. Accepting these allegations as true, Koehler will likely infringe on the '775 Patent. Koehler is not required to further walk blindly down the path of potential infringement before seeking clarification of its rights, as "putting the challenger to the choice between abandoning his rights or risking prosecution [ ] is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *MedImmune*, 549

U.S. at 129. *See also id*. at 134 ("The rule that a plaintiff must destroy a large building, bet the farm, or . . . risk treble damages . . . before seeking a declaration of its actively contested legal rights finds no support in Article III.").

Therefore, the Court finds there is a real, concrete controversy between Koehler and HTI sufficient to permit adjudication by this Court of Koehler's declaratory judgment claim challenging the validity of the '775 Patent. As such, HTI-Plavnik are not entitled to the dismissal of counterclaim Count III.

### iv. Koehler's Declaratory Judgment Counterclaim for Double Patenting (Count VII)

In counterclaim Count VII, Koehler asserts an alternative claim for double patenting based on the dispute between the parties regarding the relationship of the '146 Patent and '775 Patent. According to Koehler, if the Court were to find in favor of HTI on its inventorship claim regarding the '146 Patent, HTI would, in essence, obtain two patents covering the same subject matter, thereby extending the '775 Patent's period of exclusivity beyond its original term. HTI-Plavnik contend counterclaim Count VII must be dismissed because Koehler fails to allege that the '146 Patent and '775 Patent claim the same subject matter.

A claim for double patenting "precludes one person from obtaining more than one valid patent for either (a) the 'same invention,' or (b) an 'obvious modification of the same invention." *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985).

Double patenting based on the "same invention" is premised on 35 U.S.C. § 101 and "forbids an individual from obtaining more than one patent on the same invention." *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1372 (Fed. Cir. 2014) (citing 35 U.S.C. § 101) ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain *a* patent therefor.") (emphasis added). The Federal Circuit has clarified that the "term 'same invention,' in this context means an invention drawn to identical subject matter." *In re Longi*, 759 F.2d at 892.

An "obvious" double patenting claim is a "judicially-created doctrine . . . prohibiting a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001). According to the Federal Circuit, "the fundamental reason for the rule of obviousness-type double patenting is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about." *Id.* at 968 (internal punctuation omitted). *Cf. Abbvie*, 764 F.3d at 1374 ("[T]he doctrine of obviousness-type double patenting continues to apply where two patents that claim the same invention have different expiration dates.").

The Court must analyze (1) the differences between the subject matter of the earlier and later patent and (2) whether the differences make the claims patentably distinct. *Eli Lilly*, 251 F.3d at 967. *See also Abbvie*, 764 F.3d at 1374 ("A later claim that is not patentably distinct from, *i.e.*, is obvious over or anticipated by, an earlier claim is invalid for obviousness-type double patenting.") (internal citation omitted); *Georgia-Pac. Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 1999) ("Under obviousness-type double patenting, a patent is invalid when it is merely an obvious variation of an invention disclosed and claimed in an earlier patent by the same inventor.").

HTI alleges that "the subject matter of most, if not all, of the '146 Patent's claims was previously disclosed" in the 510 Publication, which subsequently issued as the '775 Patent.[59] Moreover, HTI alleges "the 510 Publication discloses to one of ordinary skill in the art that HTI was in possession of the invention . . . within the scope of the '146 Patent claims."[60] Koehler, likewise, alleges that the "'146 Patent is directed to an invention that is embodied in HTI's previously-published 510 Publication (which later matured to HTI's '775 Patent)."[61] Crucially,

---

[59]   ECF 1, ¶ 29.

[60]   *Id*. ¶ 42.

[61]   ECF 53, ¶ 95.

while the '775 Patent is set to expire on July 5, 2031, the '146 Patent will not expire until September 27, 2033.[62]

Treating Koehler's allegations as true, both the '146 Patent and '775 Patent are based on the same underlying subject matter captured in the 510 Publication. If the Court finds that HTI is successful in its inventorship claim, and HTI seizes control of the '146 Patent, it will inherently gain an extension over the same subject matter that comprised its '775 patent. Given this posture, and since Koehler pleads this counterclaim in the alternative, dismissal of counterclaim Count VII is not warranted at this time.

### v.    Koehler's Unjust Enrichment Counterclaim (Count VIII)

Koehler's state-law unjust enrichment claim, pleaded in the alternative, is premised on allegations that HTI knew of Koehler's efforts to obtain the '146 Patent in advance of its issuance, but failed to take action before the USPTO. According to Koehler, HTI-Plavnik allowed Koehler to expend the necessary time and money prosecuting the '146 Patent with the intent to challenge the inventorship of the patent once the USPTO issued it. Put another way, Koehler asserts that, if HTI is successful in its inventorship claim, it would receive a

---

[62]  *Id*. ¶¶ 98–99.

windfall as its delay in bringing suit forced Koehler to expend the resources HTI-Plavnik would have otherwise used. HTI-Plavnik counters that the claim fails as a matter of law because its inventorship claim did not accrue until the USPTO issued the '146 Patent and is not otherwise barred by any statute of limitations.

In Georgia, the elements of a claim for unjust enrichment are that "(1) a benefit was provided, (2) compensation for that benefit was not received, and (3) the failure to compensate renders the transaction unjust." *Ridgeline Capital Partners, LLC v. MidCap Fin. Servs., LLC*, 340 F. Supp. 3d 1364, 1372 (N.D. Ga. 2018). Treating Koehler's allegations as true, and assuming HTI prevails on its inventorship claim, Koehler would have directly provided a benefit to HTI by successfully prosecuting the '146 Patent, for which it did not receive compensation from HTI. According to Koehler, this would be unjust because HTI knew of Koehler's patenting efforts, yet sat on its hands and waited to challenge inventorship until the '146 Patent actually issued. This is enough to state a plausible, alternative claim at this stage.

HTI-Plavnik's reliance on *Pei-Herng Hor v. Ching-Wu Chu* is unpersuasive, as that case does not stand for the proposition that this type of unjust enrichment claim is barred as a matter of law. 699 F.3d 1331 (Fed. Cir. 2012). Instead, in *Hor*, the Federal Circuit simply clarified that a "claim for correction of inventorship

does not accrue until the patent issues." *Id*. at 1335. As such, the Federal Circuit found the plaintiff's claim was not barred by the doctrine of laches. *Id*. Here, Koehler has not raised a statute of limitations defense in response to HTI's inventorship cause of action. And, as Koehler notes, the Federal Circuit did not discuss, let alone prohibit, a claim for unjust enrichment based on a party's failure to take timely action in the USPTO. Therefore, HTI-Plavnik are not entitled to the dismissal of Koehler's counterclaim Count VIII at this stage.

## IV.    CONCLUSION

HTI-Plavnik's partial motion to dismiss [ECF 60] is **GRANTED IN PART** and **DENIED IN PART.** Koehler may proceed with all of its counterclaims with the exception of counterclaim Count II, which is **DISMISSED AS MOOT**. Since the remainder of Koehler's counterclaims are not subject to dismissal, its motion in the alternative to amend its Answer and Counterclaims [ECF 73] is **DENIED AS MOOT**. Defendants' partial motion for judgment on the pleadings [ECF 91] is **GRANTED**. HTI may only proceed on Count I of its Complaint.

**SO ORDERED** this the 5th day of June 2020.

Steven D. Grimberg
United States District Court Judge