## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| HEAT TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> PAPIERFABRIK AUGUST KOEHLER SE, MANFRED HUBER, JOACHIM UHL, LUTZ KÜHNE, and MICHAEL BOSCHERT, <br><br> Defendants. | Civil Action No. 1:18-cv-01229-SDG |
| PAPIERFABRIK AUGUST KOEHLER SE, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> HEAT TECHNOLOGIES, INC. and ZINOVY PLAVNIK, <br><br> Counterclaim Defendants. | |

### OPINION AND ORDER

This matter is before the Court on a motion to amend the Complaint filed by Plaintiff/Counter Defendant Heat Technologies, Inc. (HTI) [ECF 131] and a motion for leave to file a surreply by Defendants Papierfabrik August Koehler SE (Koehler), Manfred Huber, Joachim Uhl, Lutz Kühne, and Michael Boschert [ECF 149]. For the following reasons, both motions are **DENIED**.

## I.    BACKGROUND

This is a dispute concerning the inventorship of U.S. Patent No. 9,851,146 ('146 Patent) and, by extension, the validity of U.S. Patent No. 9,068,775 (the '775 Patent). On March 23, 2018, HTI filed its original Complaint and asserted five claims against Defendants for: correction of inventorship for the '146 Patent under 35 U.S.C. § 256 (Count I); unjust enrichment (Count II); conversion (Count III); punitive damages (Count IV); and attorneys' fees and litigation expenses (Count V).[1] On September 13, 2019, after an unsuccessful motion to dismiss and unsuccessful interlocutory appeal to the Federal Circuit Court of Appeals, Defendants answered HTI's Complaint and Koehler asserted eight counterclaims against HTI and Zinovy Plavnik (collectively, HTI-Plavnik).[2] On October 28, 2019, the Court entered a scheduling order setting November 14, 2019 as the deadline to amend the pleadings.[3]

On February 12, 2020, Defendants filed a partial motion for judgment on the pleadings, requesting the dismissal of HTI's state law claims—Counts II–V.[4]

---

[1]    ECF 1.

[2]    ECF 53.

[3]    ECF 77.

[4]    ECF 91.

On June 5, 2020, the Court granted Defendants' motion and dismissed those Counts (the June 5 Order).[5] As a result, HTI's change of inventorship claim is the only cause of action that remains pending from the original Complaint.

On July 8, 2020, HTI filed the instant request for leave to amend the Complaint.[6] HTI seeks to supplement its factual allegations to revive its state law torts—conversion and unjust enrichment—dismissed in the June 5 Order. On September 18, 2020, Defendants filed a response in opposition to HTI's motion.[7] HTI filed its reply on October 9, 2020.[8] On October 21, Defendants requested leave to file a surreply in opposition to the motion to amend.[9] HTI opposed that request on November 6, 2020.[10] Defendants filed a reply on November 20.[11]

---

[5]   ECF 125.

[6]   ECF 131.

[7]   ECF 140. Defendants' deadline to respond was stayed as part of the Court's order directing the parties to mediate. On October 1, 2020, Defendants filed an unredacted version of their response [ECF 147].

[8]   ECF 148.

[9]   ECF 149.

[10]   ECF 152.

[11]   ECF 156.

## II.    LEGAL STANDARD

When a party seeks leave from the Court to amend a pleading, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court should only deny leave under Rule 15 if "there is substantial ground for doing so, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008). Notwithstanding, the ultimate decision of whether to grant leave to amend remains committed to the Court's sound discretion. *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1240 (11th Cir. 2009); *Interstate Nat'l Dealer Servs., Inc. v. U.S. Auto Warranty, LLC*, No. 1:12-CV-04265-RWS, 2015 WL 13273318, at *8 (N.D. Ga. Dec. 11, 2015) ("[L]eave to amend is by no means automatic.").

Rule 16 requires the Court to issue a scheduling order that, among other things, "limit[s] the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "When a plaintiff seeks leave to amend its complaint after the time required by the district court's scheduling order, the plaintiff 'must first demonstrate good cause under Rule 16(b) before we will

consider whether amendment is proper under Rule 15(a).'" *AMG Trade & Distrib., LLC v. Nissan N. Am., Inc.*, 813 F. App'x 403, 408 (11th Cir. 2020) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). To consider only Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 133 F.3d at 1419. The good cause requirement "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *AMG Trade & Distrib.*, 813 F. App'x at 408 (quoting *Sosa*, 133 F.3d at 1418) ("If a party was not diligent, the good cause inquiry should end."). Moreover, if "the information supporting the proposed amendment to the complaint was available to the plaintiff even before [it] filed suit," the Court may consider that as a factor "weigh[ing] against a finding of diligence." *Id.* (citing *Sosa*, 133 F.3d at 1419).

## III.   DISCUSSION

HTI requests permission to file an Amended Complaint containing augmented factual allegations it asserts support—and ostensibly revive—its state law tort claims dismissed in the June 5 Order. Defendants argue against permitting leave to amend because (1) HTI has not satisfied the good cause standard of Rule

16, and even if it has, (2) substantial grounds exist for denying amendment under Rule 15.

### A.     Defendants' Surreply

Defendants seek leave to file a surreply in opposition to HTI's motion for leave to amend. Although not authorized by the Federal Rules of Civil Procedure or Local Rules, "the Court may in its discretion permit the filing of a surreply," but should only do so "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005). To permit the filing of "surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." *Id*. Defendants contend a surreply is warranted because HTI's reply brief "misconstrues the Court's [June 5 Order] and its reasoning . . . as to why HTI's state law claims are preempted under the GTSA."[12] Defendants endeavor "to ensure the Court's analysis and forthcoming ruling on HTI's Motion for Leave to Amend and Supplement is on a clear and accurate record."[13] Put another way, Defendants do not assert that HTI raised new issues in its reply brief; rather, they seek to address and respond to the arguments

---

[12]   ECF 149, at 3.

[13]   *Id*.

articulated in that filing. But courts in this district routinely find such circumstances inappropriate to justify a surreply. *E.g., Chemence Med. Prod., Inc. v. Medline Indus., Inc.*, 119 F. Supp. 3d 1376, 1383 (N.D. Ga. 2015) ("If, however, the new arguments simply respond to arguments raised in a response brief, no surreply is warranted."). The Court similarly finds a surreply unnecessary in this motion sequence. Defendants' motion for leave [ECF 149] is **DENIED**.

### B.    HTI's Motion for Leave to Amend

Pursuant to the Eleventh Circuit's instructions, the Court addresses HTI's arguments under Rule 16 first before turning to Rule 15. *Sosa*, 133 F.3d at 1419.

### 1.    Amendment Under Rule 16

The Court entered a scheduling order in this case on October 28, 2019. That order established November 14, 2019 as the deadline for amending the pleadings. HTI did not request leave to amend prior to that deadline. HTI instead filed the instant motion nearly eight months later, after the June 5 Order dismissed its tort claims. Viewing HTI's proposed Amended Complaint, Defendants are correct that the new factual allegations are entirely premised on facts and information that have been in HTI's possession over eight years—long before it initiated this action. This too is a consideration militating in favor of denying the motion to amend under Rule 16 based on a lack of diligence. *AMG Trade & Distrib.*, 813 F. App'x at

408. *See also Quinn v. Deutsche Bank Nat. Tr. Co.*, 625 F. App'x 937, 940 (11th Cir. 2015) ("A lack of diligence in pursuing a claim is sufficient to show a lack of good cause. A plaintiff's request to amend his complaint based on facts already known to him before he filed suit indicates a lack of diligence in prosecuting the suit.") (citing *S. Grouts & Mortars*, 575 F.3d at 1241; *Sosa*, 575 F.3d at 1241).

Nonetheless, HTI avers persuasive arguments to the contrary. According to HTI, it believed its tort claims to be well-pleaded at all times prior to the November 14, 2019 deadline. To be sure, Defendants previously filed a Rule 12(b)(6) motion to dismiss the original Complaint without addressing the tort claims. Defendants did not raise any issue regarding these claims until its motion for judgment on the pleadings filed on February 12, 2020—approximately four months *after* expiration of the deadline to amend in the scheduling order. HTI vigorously opposed Defendants' motion and specifically imbedded a request to amend in its response brief in the event the Court dismissed the claims. In the June 5 Order, the Court invited HTI to seek leave to amend through the proper channels.[14] HTI promptly complied. Further, although not required, the Eleventh Circuit has "espoused the view that, where a more carefully drafted complaint might state a claim, the

---

[14]   ECF 125, at 27 n.54.

district court should grant a plaintiff at least one chance to amend its complaint." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016). Finally, it is true that this case has been pending nearly three years. However, discovery is still ongoing, no party has filed a motion for summary judgment, and the Court does not believe an amendment at this juncture would cause Defendants substantial prejudice. Therefore, the Court finds HTI has met its burden of demonstrating good cause under Rule 16.

### 2.    Amendment Under Rule 15

Although it is axiomatic that leave to amend should be freely given, it is equally well established that "[a] district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss." *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011). *See also Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019) ("Denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.") (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (brackets omitted)). To ascertain futility, the Court employs "[t]he same standard of legal sufficiency as applied under a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)." *Bazemore v. U.S. Bank, N.A.*, 167 F. Supp.

3d 1346, 1354–55 (N.D. Ga. 2016). *See also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014) ("[W]hen a . . . court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail. In other words, denial on grounds of futility is essentially a holding that the proposed amended complaint fails to state a claim upon which relief can be granted.") (citations omitted).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556). An issue of preemption is an affirmative defense, but is nonetheless ripe for resolution on a motion to dismiss "under Rule 12(b)(6) when [the complaint's] own allegations indicate the existence of an affirmative defense, so long as the defense clearly

appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d

1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985). *See also Wiersum*

*v. U.S. Bank, N.A.*, 785 F.3d 483, 491 (11th Cir. 2015) (affirming grant of motion to

dismiss under Rule 12(b)(6) based on federal preemption).

 In the June 5 Order, the Court found that HTI's tort claims were preempted

by the federal Patent Act and the Georgia Trade Secrets Act (GTSA).[15] HTI avers

its new factual allegations move these claims out of the ambit of preemption under

both statutes as to resurrect them in full. Defendants disagree and maintain that

the proposed Amended Complaint is futile because the state torts are still

preempted. The Court addresses preemption under each statute in turn.

***i.***   **Preemption Under the Federal Patent Act**

 Generally, federal law may preempt state law in three ways. This case

concerns only conflict preemption. This form of preemption "involves a

consideration of whether that law stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress." *Aronson v. Quick Point*

*Pencil Co.*, 440 U.S. 257, 262 (1979). According to the Federal Circuit, "[f]ederal law

preempts state law that offers 'patent-like protection' to discoveries unprotected

---

[15] ECF 125.

under federal patent law." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377–78 (Fed. Cir. 2005) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989)). *See also Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1305–06 (Fed. Cir. 2003) ("Through the federal patent laws, Congress has balanced innovation incentives against promoting free competition, and state laws upsetting that balance are preempted."). Specifically, in *Ultra-Precision*, the Federal Circuit found that, "[i]n the absence of an incremental benefit conferred, any attempt to obtain a patent-like royalty for the making, using, or selling of a product in the public domain under the rubric of state unjust enrichment law is preempted." *Id.* at 1382. If a plaintiff were able to seek patent-like protection dressed up as tort claims, "a would-be inventor need not satisfy any of the rigorous standards of patentability to secure a perpetual patent-like royalty under state law based on the use of an unpatented idea." *Id.* at 1382.

Despite HTI's supplemented factual allegations, its tort claims remain squarely within those preempted by the Patent Act. As with its original Complaint, HTI's unjust enrichment claim is premised on Defendants receiving "a benefit from HTI in their improper taking, possession, and use of HTI's proprietary information and intellectual property" that HTI contends it did not disclose in the

'510 Publication.[16] Its conversion claim is similarly based on allegations that HTI disclosed "proprietary information about [its] technology and drying systems . . . to Defendants" who "wrongfully and without justification possessed and interfered with [that] property" by "obtaining [ ] a patent and access to HTI's confidential information that was not disclosed in HTI's '510 Publication."[17]

The thrust of the proposed Amended Complaint is allegations that Defendants owed HTI various duties of confidentiality extending beyond the benefit HTI freely provided the public when it disclosed the '510 Publication. For example, HTI points to certain documents exchanged by the parties marked as confidential.[18] HTI also relies on various promises and representations allegedly made by Defendants that they would keep such information confidential.[19] At one point in their dealings, Koehler provided HTI with a draft confidentiality agreement that included non-disclosure and use restrictions.[20] According to HTI, the parties never executed that agreement.[21] Finally, HTI points to a purchase

---

[16]   ECF 131-2, ¶¶ 112–13.

[17]   *Id*. ¶¶ 118–21.

[18]   *Id*. ¶ 51, 57–58.

[19]   *Id*. ¶ 56.

[20]   *Id*. ¶¶ 65–67.

[21]   *Id*.

order that stated Koehler's online "General Terms of Purchase" bound the parties in that purchase.[22] The General Terms of Purchase contained a confidentiality provision stating, in part, that:

> [Koehler] and the supplier [*i.e.*, HTI] undertake a mutual obligation to treat the content of the contacts concluded between use and all knowledge of confidential information and business secrets acquired in the course of fulfilling the contract confidentially, and to use this knowledge only in the context of fulfilling the contract.[23]

Treating these new factual allegations as true, they are not sufficient to resurrect HTI's tort claims. The new allegations do not change the fact that HTI is seeking to garner "patent-like protection" over information it cannot patent and freely disclosed to the public. Although HTI points to alleged breaches of implied or express duties of confidentiality, these only constitute continued efforts to recover damages "over and above the benefit the general public received" when HTI published the '510 Publication. *Ultra-Precision*, 411 F.3d at 1380.

At best, HTI's new factual allegations may be viewed as an attempt to push this case closer to the Federal Circuit's line of reasoning in the *American Cyanamid* cases. In one iteration of *American Cyanamid*, the Federal Circuit found that the

---

22   *Id*. ¶¶ 68–70. HTI attached a 2014 version of Koehler's General Terms of Purchase as Exhibit 15 to its proposed Amended Complaint [ECF 131-17].

23   ECF 131-17, at 4.

plaintiffs' state law unjust enrichment claim was not preempted by the Patent Act because the claim was "not 'patent-like' at all" and "spr[ung] not from an attempt to enforce intellectual property rights, but instead from Cyanamid's alleged wrongful use of the Doctor's research result." 342 F.3d at 1306. Put another way, the at-issue unjust enrichment claim was "not simply an attempt to enforce property rights," but "a legal claim to remedy the breach of a contract implied in law for disclosure of their confidential manuscript in exchange for a promise not to disseminate the idea without the Doctor's consent." *Id*. *See also id*. at 1307 (finding no conflict with Supreme Court's decision in *Bonito Boats* because "enforcement of the quasi-contract in this case does not substantially impede public use of an *unpatentable* intellectual creation") (emphasis in original).

In the June 5 Order, the Court noted that HTI did not "point to any oral or written agreement among the parties rendering such information confidential or protected."[24] In the supplemental allegations, HTI does just that. But, as the Court held in the very next sentence, "[i]n any event, HTI's voluntary sharing of this information does not change the fact that it disclosed the information it now seeks to protect in the 510 Publication well before Defendants filed their German patent

---

[24]   ECF 125, at 15.

application."[25] HTI's new factual allegations do nothing to change this fact. They also do not fit within the narrow distinction made by the Federal Circuit in *American Cyanamid* based on the unique facts in that case. Here, HTI is seeking to vindicate its intellectual property rights through tort claims for monetary damages based on Defendants' allegedly unauthorized use of its information, most (or all) of which HTI freely placed in the public sphere. Therefore, the tort claims are preempted by the Patent Act, the Amended Complaint is futile, and leave to amend must be denied.

### ii.    GTSA Preemption

In the June 5 Order, the Court additionally found HTI's tort claims were preempted by the GTSA. That statute "supersede[s] conflicting tort, restitutionary, and other laws of [the State of Georgia] providing civil remedies for [the] misappropriation of a trade secret." O.C.G.A. § 10-1-767(a). *See also Earthcam, Inc. v. Oxblue Corp.*, No. 1:11-CV-02278-WSD, 2012 WL 12836518, at *10 (N.D. Ga. Mar. 26, 2012) ("[T]he GTSA is the exclusive remedy for misappropriation of trade secrets"). The GTSA preempts claims that are premised on the same allegations that serve as the basis for a misappropriation of trade secret claim. *Robbins v.*

---

[25]    *Id*.

*Supermarket Equip. Sales, LLC*, 290 Ga. 462, 466 (2012). *See also Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1297–98 (11th Cir. 2003); *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1344–46 (N.D. Ga. 2007); *Opteum Fin. Servs., LLC v. Spain*, 406 F. Supp. 2d 1378, 1380 (N.D. Ga. 2005). The at-issue proprietary information need not qualify as a trade secret to be preempted. *Robbin*, 290 Ga. at 465–67 ("[T]he key inquiry is whether the same factual allegations of misappropriation are being used to obtain relief outside the GTSA."). In the June 5 Order, the Court adopted the approach taken in *PHA Lighting Design, Inc. v. Kosheluk*, No. 1:08-cv-01208-JOF, 2010 WL 1328754 (N.D. Ga. Mar. 30, 2010)—characterized as the "majority approach" utilized by other state and federal courts—and found HTI's tort claims preempted even though HTI did not plead them in the alternative to a claim for trade secret misappropriation.[26]

In the original Complaint, HTI premised its tort claims entirely on allegations of idea misappropriation and the theft and misuse of confidential information that could be protected as a trade secret. HTI's proposed Amended Complaint does not substantially alter the underlying nature of these allegations. Thus, according to *Robbins* and the "majority approach" articulated in *PHA*

---

[26]   ECF 125, at 22 n.46.

*Lighting* as adopted by this Court, HTI's claims fall squarely within those preempted by the GTSA.

However, the GTSA contains an important statutory exception; it does not preempt claims based on "[c]ontractual duties or remedies, whether or not based upon misappropriation of a trade secret." O.C.G.A. § 10-1-767(b)(1). *See also Diamond Power*, 540 F. Supp. 2d at 1345 ("[I]f a claim seeks to remedy an injury caused not by the misappropriation of proprietary information, but by separate conduct—such as the misappropriation of physical property or the improper interference with contractual relationships respecting something other than proprietary information—such a claim cannot be said to be 'in conflict' with the GTSA."). In the June 5 Order, the Court found HTI's tort claims did not fit within this carve-out. The Court stated the original Complaint was "completely devoid of any allegations regarding a duty of confidentiality owed to it by Defendants."[27] The Court also explained that HTI's reliance on an "expectation and understanding of confidentiality" and contentions that "Defendants misappropriated proprietary information designated as confidential" were

---

[27] ECF 125, at 23.

insufficient to allege Defendants owed it a contractual duty or raise its claims out of the realm of preemption.[28]

HTI's proposed Amended Complaint repaves much of this same ground. For example, HTI again points to its exchange of proprietary information marked confidential that Defendants allegedly represented would remain private among the parties. HTI also points to the same letter from Koehler's legal counsel regarding the Spectra device installed at Koehler's manufacturing facility. The Court already considered and rejected substantially identical arguments as part of the June 5 Order.[29] The proposed Amended Complaint raises only two new issues. First, HTI alleges Koehler provided it with a draft confidentiality agreement containing non-disclosure and use restrictions. HTI's own allegations nonetheless demonstrate that the parties never executed that agreement. Thus, HTI's reliance on implied duties stemming from an unexecuted agreement is simply another way of reframing its previous arguments this Court has already considered and rejected. Second, HTI relies on a purchase order incorporating Koehler's online "General Terms of Purchase."[30] Although these allegations—

---

[28]   *Id.* at 23–25.

[29]   *Id.*

[30]   ECF 131-17. *See supra* n.22.

taken as true—pertain to "contractual duties or remedies," the Court does not believe they resuscitate HTI's tort claims.

To reiterate, HTI's tort claims are entirely aimed at its alleged monetary injuries sustained from Defendants' purported absconding with its proprietary information. The claims do not allude to any separate conduct. And crucially, HTI is not seeking to remedy a breach of that contractual relationship premised on anything but the use of the at-issue proprietary information. At bottom, HTI's supplemental allegations appear to be an attempt to circumvent the purpose of the GTSA. As recognized by this Court, preemption under the GTSA exists because "it would make little sense to go through the rigamarole of proving information was truly a trade secret if a plaintiff could alternatively plead claims with less burdensome requirements of proof." *Diamond Power*, 540 F. Supp. 2d at 1345. *See also Robbins*, 290 Ga. at 465 ("For the GTSA to maintain its exclusiveness, a plaintiff cannot be allowed to plead a lesser and alternate theory of restitution simply because the information does not qualify as a trade secret under the act."). This rationale applies equally here; HTI cannot garner trade secret protection and pursue monetary damages through tort claims based on the alleged misappropriation of intangible information it has not—and likely cannot—allege

constitutes a trade secret. Thus, leave to amend must be denied for this additional reason.

## IV.   CONCLUSION

Defendants' motion for leave to file a surreply [ECF 149] is **DENIED** and HTI's motion for leave to amend the Complaint [ECF 131] is **DENIED**.

**SO ORDERED** this the 13th day of January 2021.

Steven D. Grimberg
United States District Court Judge